

PATRICK J. ASCIONE-6469
JUSTIN D. HEIDEMAN-8897
JUSTIN R. ELSWICK-9153
**ASCIONE & HEIDEMAN, L.L.C.**
2696 North University Avenue, Suite #180
P.O. Box 600
Provo, Utah 84604
Attorneys for Plaintiff

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

---

| | |
|---|---|
| INTERNET WORKS, L.C., a Utah L.L.C., | **COMPLAINT** |
| Plaintiff, | |
| vs. | Case No.:_____ |
| UBET TELECOM, INC, a Utah Corporation, UBTA COMMUNICATIONS, a Utah dba, UBET, a Utah dba, UBTANET, a Utah dba, UBLD LONG DISTANCE SERVICE, a Utah dba and UBTA-UBET COMMUNICATIONS, | Judge:_____  2 02C V - 887  TC |
| Defendants. | |

---

COMES NOW the Plaintiff, by and through its counsel of record, Patrick J. Ascione of

the law firm of Ascione & Heideman, L.L.C., and hereby complains of Defendants and for cause

of action alleges as follows:

### VENUE & JURISDICTION

1. Plaintiff Internet Works, L.C. ("Internet Works") is a limited liability company owing

its existence to the laws of the State of Utah.

2. Defendant UBET Telecom, Inc. is a company incorporated in Utah with its principal

place of business in the State of Utah.

3. Defendant UBTA Communications is a dba of UBET Telecom, Inc.

1

4.  Defendant UBET Communications is a dba of UBET Telecom, Inc.

5.  Defendant UBTANET is a dba of UBET Telecom, Inc.

6.  Defendant UBTA-UBET Communications is a dba of UBET Telecom, Inc.

7.  All of the events giving rise to this Complaint took place in the State of Utah.

8.  Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331.

9.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 15 U.S.C. § 1965.

## FIRST CAUSE OF ACTION
(General Allegations)

10. On or about April 16, 2001, Defendant UBET Telecom, Inc. purchased Qwest, Inc.'s telephone operations in the Uintah Basin area.

11. On or about May 2, 2002, Charlie Hall, Robert Davis, and Randy Andersen purchased Plaintiff Internet Works, which is an Internet Service Provider ("ISP").

12. Defendants' guaranteed Plaintiff Internet Works that Plaintiff would receive the same telephone services and rates that Qwest Inc. had originally charged.

13. After the purchase of Qwest's operations in the Uintah Basin area, Defendants failed to bill Plaintiff for telephone services for several months.

14. Plaintiff had to request its bills numerous times from Defendants.

15. Defendants, however, failed to provide Plaintiff with copies of those bills for several months.

16. After finally receiving accumulated bills from the Defendants, Plaintiff noticed that the bills contained various inaccuracies.

17. Plaintiff complained to Defendants regarding the errors and requested that Defendants correct the billing mistakes.

18. Defendants admitted that the bills were inaccurate and promised that they would correct the errors.

19. Defendants failed, however, to ever remedy the inaccurate billing statements.

20. Defendants have continued to bill Plaintiff inaccurately for over one (1) year.

21. Plaintiff continues to utilize Defendants' telephone services because it is the only way that Plaintiff can provide its subscribers' dial-up Internet access.

22. Defendants have recently stated that if Plaintiff does not pay the erroneous bills by August 1, 2002, Defendants will terminate any access to telephone services that Plaintiff relies upon or uses.

23. Without any telephone services, Plaintiff cannot offer any type of Internet service to its subscribers.

24. If Plaintiff cannot provide Internet services, Plaintiff's customers will be forced to subscribe to the only other ISP provider in the region—the Defendants.

25. Without customers, Plaintiff business will quickly fail.

26. Additionally, Defendants provide phone service to the Duchesne area.

27. For the customers of Defendants' Internet service, Defendants do not charge long distance fees when those customers use Defendants' dial-up Internet service.

28. However, Defendants charge long distance fees to non-customers in Duchesne who attempt to use Plaintiff's dial-up Internet service.

29. The difference in long distance fees that Defendants charge is based solely on the affiliation of Internet subscribers.

30. As a direct result of the difference in fees charged by Defendants, some of the Plaintiff's customers are required to pay long distance fees for their dial-up Internet service while Defendants' customers avoid this fee.

31. Thus, Defendants provide the same service to the same locality but charge different fees depending upon a person's Internet service provider affiliation.

32. Plaintiff has been directly injured because past have discontinued using Plaintiff's Internet service in order to avoid any long distance fees for the use of dial-up Internet service.

33. Plaintiff has and will continue to be directly injured because potential customers refuse to use Plaintiff's Internet service because they do not wish to pay for the additional long distance fees imposed by Defendants.

34. Defendants currently own all of the telephone lines in the Uintah Basin area and control the Central Office (where calls are routed), and therefore Plaintiff has no other alternative by which to obtain telephone services.

35. Defendants began making preparations in 2001 to launch high speed Internet access in the form of Digital Subscriber Lines ("DSL").

36. Concurrently, Plaintiff was anxious to begin offering high speed DSL Internet access.

37. As a result, Plaintiff met with Defendants on several occasions to discuss the possibility of providing DSL access to Plaintiff's Internet service subscribers.

38. On each occasion, Defendants stated that DSL access was not available in the area.

39. During the course of these meetings between Plaintiff and Defendants, however, Plaintiff was approached by Ashley Valley Medical Center ("AVMC") to provide the radiology department with high-speed wireless Internet access.

4

40. Shortly after negotiations between Plaintiff and AVMC, AVMC terminated the relationship with Plaintiff claiming that Defendants had provided them with DSL Internet access.

41. Plaintiff again met with Defendants to discuss the possibility of providing DSL Internet access.

42. Defendants still maintained that DSL Internet access was not available in the Uintah Basin area.

43. Plaintiff later learned that Defendants purchased DSL capable modems to begin testing DSL.

44. Plaintiff was anxious to begin testing DSL service for its customers in order to launch DSL Internet access at the same time as Defendants.

45. Plaintiff needed to provide DSL service in order to keep its own business competitive and viable.

46. Kendall Anderson, an Internet expert, advised Plaintiff that over twenty percent (20%) of its present customers would likely immediately leave Plaintiff's dial-up Internet access and subscribe to a provider who offered DSL Internet access.

47. Plaintiff was anxious to provide DSL Internet access to its customers at the earliest possible time.

48. Defendants, however, continued to refuse Plaintiff access to the phone lines in order to provide DSL.

49. Plaintiff was and is ready and capable of providing DSL Internet access.

50. In the Uintah Basin area, phone lines are already installed that would allow DSL Internet access.

51. Because Plaintiff was ready to provide DSL Internet service and because the phone lines are installed to allow DSL Internet service, Plaintiff could have provided DSL Internet service if Defendants had informed Plaintiff of the required equipment specifications and if Defendants had provided access to the appropriate telephone lines.

52. Defendants nonetheless continue to refuse to allow Plaintiff access to the DSL phone lines.

53. Even though Defendants continue to claim DSL Internet access is not available to the general public, Plaintiff is already losing customers to Defendants' DSL Internet service.

54. Recently, Defendants announced that DSL Internet Service would be made available to the Uintah Basin area on August 1, 2002.

55. Defendants are prepared to offer DSL Internet service yet Defendants have not allowed Plaintiff the opportunity to test any DSL equipment, nor have Defendants allowed Plaintiff any access to telephone lines.

56. On or about July 29, 2002, Defendants' agents offered Plaintiff the opportunity to sell DSL Internet service to Plaintiff's customers if the customers would accept DSL Internet service from Defendants.

57. In this situation, Defendants offered to sell DSL Internet service to Plaintiff so that Plaintiff could resell the service to Plaintiff's customers.

58. However, Defendants have continued to withhold any information regarding the equipment that the Plaintiff will need in order to offer DSL Internet service.

59. Additionally, Defendants have not offered access to telephone lines to the Plaintiff which would be required for Plaintiff to begin offering DSL Internet service.

60. Without information regarding equipment specifications and telephone access, Plaintiff cannot adequately prepare to offer DSL Internet service.

61. Even if Defendants allowed access to telephone lines and provided the needed information, Plaintiff would need at least one month to install DSL internet equipment and at least another month to test such equipment before Plaintiff could offer DSL internet service to the Uintah Basin area and compete with Defendants.

62. Because it would take at least two months for Plaintiff to offer DSL Internet service to the Uintah Basin area, Defendants would have a substantial head-start in gaining a majority of the marketshare for DSL Internet service.

63. This head-start would severely inhibit Plaintiff from having an equal opportunity to compete on the merits, and could cause Plaintiff considerable loss of income.

64. Under the present situation, Plaintiff would be compelled to subsist as a mere subsidiary or sales agent for Defendant.

65. As noted earlier, Defendants are also threatening to cut of all of Plaintiff's telephone services, which would render Plaintiff incapable of providing DSL Internet service or dial-up Internet service to its customers.

66. Without customers, Plaintiff could not continue as a viable business.

## SECOND CAUSE OF ACTION
(Monopoly Due to Refusal to Deal and Intentional Exclusion of Competitors)

67. Plaintiff, by this reference, incorporates herein all prior statements of fact or law, as if restated in their entirety.

68. Defendants' ownership of the DSL Internet access market in Uintah Basin is so significant that it stifles competition.

69. Defendants' considerable market ownership in Uintah Basin with regard to DSL Internet access is solely the result of Defendants' willful maintenance and intentional stifling of competition and not a result of superior business acumen or the offering of a superior product.

70. Defendants' refusal to deal with competitors and its intentional and willful exclusion of competitors from the DSL Internet access market is sufficient evidence of Defendants' monopolizing conduct.

71. As a result of this behavior, Defendants are liable to Plaintiff for violations of the Sherman Antitrust Act, 15 U.S.C. § 2, and are therefore liable to Plaintiff for damages in an amount to be determined at trial in accordance with 15 U.S.C. § 15.

72. Furthermore, Defendants are liable to Plaintiff for violations of Utah Code Ann. § 76-10-914, and are liable to Plaintiff for damages in an amount to be determined at trial in accordance with Utah Code Ann. § 76-10-919.

### THIRD CAUSE OF ACTION
(Monopoly Due to Predatory Practices)

73. Plaintiff, by this reference, incorporates herein all prior statements of fact or law, as if restated in their entirety.

74. Defendants provide most, if not all, of the telephone service to the Uintah Basin area.

75. Plaintiff has a contract with Defendants to receive certain telephone services at a fixed rate.

76. Defendants have repeatedly overcharged Plaintiff for the telephone services provided to Plaintiff.

77. By overcharging Plaintiff, Defendants have sought to make it impossible for Plaintiff to continue providing Internet service to the Uintah Basin area.

78. By overcharging Plaintiff, Defendants have sought to stifle competition among Internet service providers.

79. By overcharging Plaintiff, Defendants have engaged in predatory practices with the intent to establish a monopoly in the Uintah Basin area.

80. Defendants have no legitimate business purpose for intentionally overcharging Plaintiff.

81. As a result of these actions, Defendants are liable to Plaintiff for violations of the Sherman Antitrust Act, 15 U.S.C. § 2, and are therefore liable to Plaintiff for damages in an amount to be determined at trial in accordance with 15 U.S.C. § 15.

82. Furthermore, Defendants are liable to Plaintiff for violations of Utah Code Ann. § 76-10-914, and are liable to Plaintiff for damages in an amount to be determined at trial in accordance with Utah Code Ann. § 76-10-919.

## FOURTH CAUSE OF ACTION
(Attempt to Monopolize Due to Refusal to Deal and Intentional Exclusion of Competitors)

83. Plaintiff, by this reference, incorporates herein all prior statements of fact or law, as if restated in their entirety.

84. Defendants' conduct in refusing to provide access to DSL Internet to Plaintiff is evidence of Defendants' specific intent to exclude competitors and create a monopoly in the DSL Internet market.

85. Defendants' conduct and refusal to deal with Plaintiff constitutes unfair and anticompetitive business practices.

86. Because Defendants are the sole owners of the telephone lines (and therefore, all DSL lines) in Uintah Basin, and because Defendants control the Central Office, where telephone calls are routed, there is an extremely high probability that Defendants will succeed in capturing the

entire DSL Internet service market without allowing any competitor the opportunity to offer its services.

87. It would not be economically feasible or physically possible for Plaintiff to lay its own telephone lines in order to provide DSL Internet service.

88. Defendants' control of all telephone lines in the Uintah Basin area constitutes control of an essential facility of competition, and therefore Defendants are liable to Plaintiff for violation of the Sherman Antitrust Act, 15 U.S.C. § 2 for damages in an amount to be determined at trial pursuant to 15 U.S.C. § 15.

89. Furthermore, Defendants are liable to Plaintiff for violations of Utah Code Ann. § 76-10-914, and are liable to Plaintiff for damages in an amount to be determined at trial in accordance with Utah Code Ann. § 76-10-919.

**FIFTH CAUSE OF ACTION**
(Attempt to Monopolize Through Predatory Practices)

90. Plaintiff, by this reference, incorporates herein all prior statements of fact or law, as if restated in their entirety.

91. Defendants' provide most if not all of the telephone service in the Uintah Basin area.

92. Plaintiff has a contract with Defendants to receive certain telephone services as a fixed rate.

93. Defendants have overcharged Plaintiff for the telephone services provided to Plaintiff.

94. By overcharging Plaintiff, Defendants have attempted to make it impossible for Plaintiff to continue providing Internet service to the Uintah Basin area.

95. By overcharging Plaintiff, Defendants have attempted to inhibit competition among Internet service providers.

96. By overcharging Plaintiff, Defendants have engaged in predatory practices and attempted to form a monopoly.

97. Defendants have no legitimate business purpose for intentionally overcharging Plaintiff.

98. Therefore, Defendants are liable to Plaintiff for violations of the Sherman Antitrust Act, 15 U.S.C. § 2, and are therefore liable to Plaintiff for damages in an amount to be determined at trial in accordance with 15 U.S.C. § 15.

99. Furthermore, Defendants are liable to Plaintiff for violations of Utah Code Ann. § 76-10-914, and are liable to Plaintiff for damages in an amount to be determined at trial in accordance with Utah Code Ann. § 76-10-919.

## SIXTH CAUSE OF ACTION
(Price Discrimination)

100.    Plaintiff, by this reference, incorporates herein all prior statements of fact or law, as if restated in their entirety.

101.    Defendants provide phone service to the Duchesne area.

102.    Because Defendants control access to all telephone services, Defendants also control the entire pricing structure related to such services.

103.    Defendants' own Internet service customers are not charged long distance fees when those customers use Defendants' Dial-up Internet service to call through Defendants' central office.

104.    However, Defendants do charge long distance fees to non-customers in Duchesne who attempt to use Plaintiff's dial-up Internet service to contact the same city location.

105.    There is no distinction between what Defendants' customers and Plaintiff's customers are doing.

106.    The long distance fees that Defendants charge to Plaintiff's customers are based solely on the whether a subscriber is one of Defendants' customers or one of Plaintiff's customers.

107.    As a direct effect of the difference in fees, some of Plaintiff's customers have to pay long distance fees for dial-up Internet service while Defendants' customers avoid this additional fee.

108.    By engaging in this type of price discrimination, Defendants gain an unfair and illegal market advantage.

109.    As a result of these practices, Plaintiff has been directly injured because past customers have stopped using Plaintiff's Internet service and have started using Defendants' Internet service in order to avoid long distance fees.

110.    In addition, potential customers refuse to sign up for Plaintiff's services because they wish to avoid the additional fee charge.

111.    Therefore, Defendants are liable to Plaintiff for violations of the Clayton Antitrust Act, 15 U.S.C. § 13, and are therefore liable to Plaintiff for damages in an amount to be determined at trial in accordance with 15 U.S.C. § 15.

112.    Furthermore, Defendants are liable to Plaintiff for violations of Utah Code Ann. § 13-5-3, and are liable to Plaintiff for damages in an amount to be determined at trial.


WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.  For judgment against the Defendants for violating the Sherman Antitrust Act, 15 U.S.C. § 2, and for creating a monopoly and attempting to monopolize the DSL Internet service market in an amount to be determined at trial.

2. For judgment against the Defendants for violating the Sherman Antitrust Act, 15 U.S.C. § 2, and for using predatory practices to create a monopoly in an amount to be determined at trial.

3. For judgment against the Defendants for violating Utah Code Ann. § 76-10-914, and for creating a monopoly and attempting to monopolize the DSL Internet service market in an amount to be determined at trial.

4. For judgment against the Defendants for violating Utah Code Ann. § 76-10-914, and for using predatory practices to create a monopoly in an amount to be determined at trial.

5. For judgment against the Defendants for violating the Clayton Antitrust Act, 15 U.S.C. § 13, and for price discrimination in an amount to be determined at trial.

6. For judgment against the Defendants for violating Utah Code Ann. § 13-5-3, and for price discrimination in an amount to be determined at trial.

7. For treble damages to be paid to Plaintiff in accordance with 15 U.S.C. § 15.

8. For treble damages to be paid to Plaintiff in accordance with Utah Code Ann. § 76-10-919.

9. For a preliminary injunction and temporary restraining order during the pendency of these proceedings that prohibits Defendants from advertising, marketing, or offering DSL Internet service to any person, business, or entity until Plaintiff has an opportunity to offer DSL Internet service concurrently with the Defendants.

10. For a preliminary injunction and temporary restraining order during the pendency of these proceedings that prohibits Defendants from soliciting Plaintiff's customers to purchase Defendants' DSL Internet service.

13

11. For a preliminary injunction and temporary restraining order during the pendency of these proceedings that prohibits Defendants from selling DSL Internet service until Plaintiff is capable of selling DSL Internet service.

12. For a preliminary injunction and temporary restraining order during the pendency of these proceedings that prohibits Defendants from providing free telephone service to its Internet service subscribers in Duchesne where Defendants are charging non-customers long distance fees.

13. For a preliminary injunction and temporary restraining order during the pendency of these proceedings that prohibits Defendants from destroying, deleting, shredding, and removing any and all information, documents, correspondence, and records describing or detailing (1) Defendants' efforts to provide DSL Internet service to Uintah Basin area; (2) Plaintiff's efforts to provide DSL Internet service to Uintah Basin area; (3) Defendants' business plans regarding telecommunication service in Uintah Basin area; and (4) Defendants' billing schedules for the services that Defendants provide.

14. For a preliminary injunction prohibiting Defendants from overcharging Plaintiff for telephone services whose costs have been fixed by contract.

15. For a preliminary injunction prohibiting Defendants from terminating, disrupting, disconnecting, or otherwise failing to provide telephone services to the Plaintiff during these proceedings;

16. For a permanent injunction prohibiting Defendants from inhibiting Plaintiff from providing DSL Internet service to the Uintah Basin area.

17. For a permanent injunction prohibiting Defendants from refusing to provide to Plaintiff access to telephone lines that would allow Plaintiff to provide DSL Internet service.

18. For a permanent injunction prohibiting Defendants from overcharging for telephone services where the telephone rates have been fixed by contract.

19. For court costs and fees incurred.

20. For reasonable attorneys' fees, as provided by statute or otherwise.

21. For such other and further relief as this Court deems just.

DATED this _____ day of August, 2002.

Ascione & Heideman, L.L.C.

_____
Patrick J. Ascione,
Attorney for Plaintiff

**Plaintiff's Address:**
Internet Works, L.C.
94 East Main Street, Suite 3
Vernal, UT 84078